United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN KELLEY and KATHY KELLEY, | No. C 09-01538 SI |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND** |
| v. | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., *et al.* | |
| Defendants. | |

Defendants Aurora Loan Services, Inc.; Aurora Bank FSB, formerly known as Lehman Brothers Bank FSB; and Mortgage Electronic Registration Systems have filed motions to dismiss plaintiffs' First Amended Complaint. Plaintiffs have filed a motion for a preliminary injunction. The motions are scheduled for hearing on August 14, 2009. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument and VACATES the hearing and the case management conference scheduled for the same day. Having considered the papers submitted, and for good cause shown, the Court GRANTS defendants' motions with leave to amend and DENIES plaintiffs' motion. <u>If plaintiffs choose to file an amended complaint, they must do so by **September 4, 2009.**</u>

**BACKGROUND**

On March 28, 2006, plaintiffs bought a property at 4173 Barnes Road in Santa Rosa, California. They financed the purchase with a loan for $894,000 from Homecomings Financial Network, Inc.

("Homecomings"). Def. MERS' Request for Judicial Notice (MERS Request), ex. A.[1] Plaintiffs obtained an adjustable rate mortgage, meaning that they were charged a variable interest rate. Plaintiffs allege that the initial interest rate was 7.750%.[2]

The gravamen of plaintiffs' complaint is that plaintiffs entered into this loan with Homecomings because they relied on material misrepresentations about the loan. For example, Homecomings allegedly overstated the value of the property by $250,000 and misstated plaintiffs' income. Homecomings also made false statements about plaintiffs' obligations under the loan and did not explain how an adjustable rate mortgage is structured.

After the mortgage transaction was consummated, Homecomings sold the loan to defendant Aurora Loan Services, LLC ("Aurora"). On May 21, 2008, defendant Cal-Western Reconveyance Corp. ("Cal-Western") issued a notice of default, which stated that as of that date, plaintiffs were in default in the sum of $12,364.48. MERS Request, ex. B.

On September 18, 2008, plaintiffs signed a "workout agreement" with Aurora. Def. Aurora's Request for Judicial Notice (Aurora Request), ex. 3. The agreement provided that plaintiffs were $28,859.63 in arrears (from $25,888.11 in unpaid monthly payments and the remainder from legal fees and "corporate advances"). *Id.* The agreement also provides, "Customer admits that the Arrearage is correct and is currently owing under the Loan Documents, and represents, agrees and acknowledges that there are no defenses, offsets, or counterclaims of any nature whatsoever to any of the Loan Documents or any of the debt evidenced or secured thereby." *Id.* ¶ 3. The workout agreement set out a payment plan, whereby plaintiffs would make an initial payment of $4000, followed by monthly payments of $3,162.20 in October and November 2008, and $28,504.08 in December 20008. *Id.*, appendix A ¶ a.1.

On January 26, 2009, Cal-Western issued a notice stating that the Barnes Road property would be auctioned at a trustee's sale on February 23, 2009. *Id.*, ex. C.

---

[1] Plaintiffs claim that Homecomings Financial Network, Inc., is doing business as Homecomings Financial, LLC, which is also named as a defendant. The Court refers to both entities as "Homecomings."

[2] In fact, it appears that the initial interest rate on plaintiffs' Promissory Note was 1.00%, and that this "teaser" rate was subject to change in May 2006. *See* Def. Aurora's Request for Judicial Notice, ex. 1.

2

Plaintiffs filed a complaint in Sonoma County Superior Court on March 24, 2009. Plaintiffs alleged fifteen causes of action, including claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and the Real Estate and Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* Aurora invoked federal question jurisdiction and removed to this Court on April 8, 2009. Now before the Court are motions to dismiss filed by Aurora and Mortgage Electronic Registration Systems ("MERS").

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). While courts do not require "heightened fact pleading of specifics," *id.*, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 1965. Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.* In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**1.   Judicial Notice**

Defendants ask the Court to take judicial notice of the following documents related to the mortgage agreement at issue in this case: (1) the deed of trust, (2) the notice of default, (3) the notice of trustee's sale, *see* MERS Request, exs. A-C, (4) the promissory note, and (5) the workout agreement, *see* Aurora Request, exs. 1, 3. Aurora also asks the Court to take judicial notice of Lehman Brothers Bank's federal stock charter. *See* Aurora Request, ex. 4. Finally, MERS requests that the Court take judicial notice of complaints filed in state court. *See* MERS Request, exs. D, E, F. Plaintiffs do not object to these requests.

The Court finds that these documents are suitable matter for judicial notice and GRANTS defendants' request pursuant to Federal Rule of Evidence 201.

**2.   Federal Preemption**

Aurora Bank is a federally chartered savings bank; Aurora Loan Services, Inc., is its wholly owned subsidiary.[3] *See* Aurora Request, exs. 4, 5. Aurora argues that plaintiffs' claims for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* (claims 1 and 7), fraud (claims 2 and 6) and conversion (claim 4) are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*, and the regulations promulgated pursuant to that statute by the Office of Thrift Supervision ("OTS"). HOLA was enacted in 1933 to regulate federally charted savings associations. It was a "'radical and comprehensive response to the inadequacies of the existing state system,' and [is] 'so pervasive as to leave no room for state regulatory control.'" *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008) (citing *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979)).

Pursuant to 12 U.S.C. § 1464, the OTS issued 12 C.F.R. § 560.2, which provides that certain types of state laws are preempted by HOLA. Paragraph (b) of § 560.2 provides a non-exhaustive list of such laws, including state laws that purport to impose requirements regarding:

---

[3] According to the Aurora defendants, as recently as March 2009, Aurora Bank was Lehman Brothers Bank. The Court refers to these defendants as "Aurora."

4

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
> . . .
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages[.]

12 C.F.R. § 560.2(b).

Paragraph (c) of § 560.2 provides that HOLA does not preempt state laws that "only incidentally affect the lending operations of Federal savings associations," including "contract and commercial law," "real property law," and "tort law." 12 C.F.R. § 560.2(c).

The OTS also describes the analytic framework courts should use when determining whether a state law is preempted by § 560.2:

> When analyzing the status of state laws under § 560.2, the first step [is] to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then . . . the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996) (cited in *Silvas*, 514 F.3d at 1005). Applying this framework in *Silvas*, the Ninth Circuit held that UCL claims based on allegations that the defendant had included "false information on its website and in every media advertisement to the California public" were preempted because they were based on the defendant's disclosures and advertising, and therefore fell within the specific type of state provision listed in § 560.2(b)(9). *Silvas*, F.3d at 1004.

In this case, plaintiffs contend that defendants violated the UCL by "making untrue or misleading statements . . . with the intent to induce" plaintiffs into entering into a mortgage. FAC ¶ 43. These misrepresentations included "statements regarding the terms and payment obligations" on plaintiffs' loan. *Id.* Plaintiffs also allege that defendants engaged in unlawful business practices in violation of the UCL, by creating "an illegal and unnecessarily risky business model" and by "artificially raising the value of the home to allow for a larger loan." FAC ¶ 75. Plaintiffs contend that

5

defendants committed fraud by making false representations about plaintiffs' loan, including that "any prepayment penalties would be waived" and that plaintiffs were properly qualified for their loans. FAC ¶ 46. Finally, plaintiffs contend that their loan amounted to conversion because defendants overstated the value of the Barnes Road property. FAC ¶ 58.

Applying the HOLA preemption framework, § 560.2(b)(9) provides that HOLA preempts state laws that purport to regulate disclosures on credit-related documents. 12 C.F.R. § 560.2(b)(9). Section 560.2(b)(4) provides that state laws cannot regulate the terms of credit. 12 C.F.R. § 560.2(b)(4). The Court agrees with defendants that plaintiffs' state law claims that are based on deficient disclosures on plaintiffs' loan documents and the structure of plaintiffs' loan are preempted by HOLA. Accordingly, to the extent plaintiffs' UCL, fraud, and conversion claims are based on allegations that the terms of plaintiffs' loan were unlawful and that plaintiffs did not receive sufficient disclosures about their mortgage, they are preempted by HOLA and are dismissed as to Aurora. If plaintiffs wish to reallege these claims against Aurora, they must reframe them in terms of HOLA violations and show that the statue provides a private right of action for the alleged violations.

### 3. State Law Claims

The overarching problem with plaintiffs' complaint is that plaintiffs do not allege specific facts in support of their contention that they were defrauded. Plaintiffs state that their "theory of the case" is that "defendants entered into a conspiracy to willfully defraud borrowers into accepting unduly risky loans for which they did not qualify to make a quick buck." Pl. Opp. to Aurora Mot., at 18. This theory does not explain why any of defendants' actions were unlawful. For example, plaintiffs do not explain how they were misled about the terms of their loan, or how the loan itself was unlawful.

A second problem that plaintiffs must address is that they do not allege facts showing each defendant's involvement in this case. Plaintiffs allege that Homecomings was plaintiffs' mortgage lender and that Homecomings sold the loan to Aurora, but no other defendants are mentioned by name. In addition, plaintiffs do not allege facts in support of their claim that Aurora is liable for the purportedly wrongful acts of Homecomings. Plaintiffs' general allegations that all defendants were engaged in a conspiracy are not sufficient. If plaintiffs choose to file an amended complaint, they must specify which

1 causes of action are alleged against which defendant. Then, <u>for each cause of action</u>, they must allege
2 facts showing why each defendant is liable.

3 Finally, plaintiffs must address the admissions they appear to have made in their September 18,
4 2008 agreement with Aurora.

5 With these issues in mind, the Court will address each of plaintiffs' claims.

### A.   UCL (claims 1 and 7)

California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, prohibits "any unlawful, unfair or fraudulent business act or practice." *Cel-Tech Communic'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.* (citation omitted).

Here, plaintiffs contend that defendants violated the UCL by making misleading statements about plaintiffs' obligations under the mortgage, FAC ¶ 43, and by creating an "illegal and unnecessarily risky business model," FAC ¶ 75. Plaintiffs' claims fail because they do not explain why these acts constitute predicate offenses for the purposes of the UCL. For example, plaintiffs do not allege facts showing why the mortgage at issue here was unlawful or why defendants' statements were likely to mislead consumers. Accordingly, plaintiffs' UCL claims are DISMISSED with leave to amend.

### B.   Breach of the implied covenant of good faith and fair dealing (claim 3)

"Under California law, 'every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1101 (N.D. Cal. 2008) (citing *McClain v. Octagon Plaza, LLC*, 159 Cal. App.4th 784, 798 (2008)) (citation and ellipses omitted). The implied covenant "prevent[s] a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Id.* (citing *McClain*, 15 Cal. App. 4th at 806). "[T]he scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers, Inc. v. Marathon Development Cal., Inc.*, 2 Cal. 4th 342, 373

7

1  (1992).  "Generally, no cause of action for the tortious breach of the implied covenant of good
2  faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary
3  characteristics.'" *Pension Tr. Fund v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (quoting *Mitsui
4  Mfrs. Bank v. Superior Court*, 212 Cal. App. 3d 726, 730 (1989)).  "A central test of whether a lender
5  is subject to this tort is whether there is 'a fiduciary relationship in which the financial dependence or
6  personal security by the damaged party has been entrusted to the other.'" *Id.* (citing *Mfrs. Bank*, 212 Cal.
7  App. 3d at 731).  A lender "owes a fiduciary duty to a borrower when it excessively controls or
8  dominates the borrower."  *Id.* (citing *Credit Managers Ass'n v. Superior Court*, 51 Cal. App.3d 352,
9  359-61 (1975)).

10  Plaintiffs' claim fails because they do not explain what contractual agreement is the basis for this
11  cause of action.  If it is a written agreement, i.e. plaintiffs' mortgage agreement, they must allege facts
12  showing that they were denied the benefit of this contract.  If this action is based on an oral agreement,
13  they must also allege the existence of an oral contract.  In addition, plaintiffs have not alleged facts
14  showing the existence of a special relationship with fiduciary characteristics.  Accordingly, this claim
15  is DISMISSED with leave to amend.

### C. Breach of fiduciary duty (claim 8)

The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary relationship, (2) its breach, (3) and damage proximately caused by that breach. *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991). As noted in the foregoing section, plaintiffs have failed to allege that any of the defendants owed plaintiffs a fiduciary duty, nor have they alleged any facts which would give rise to such a duty..

### D. Fraud (claims 2 and 6)

Under California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage." *Gil v. Bank of Am., N.A.*, 138 Cal. App. 4th 1371, 1381 (2006). Common law claims of fraud must be pled with sufficient particularity. *See* Fed. R. Civ. P. 9(b) ("[I]n all averments of fraud . . . the circumstances constituting

8

fraud . . . shall be stated with particularity."). Therefore, in addition to the "time, place and content of an alleged misrepresentation," a complaint "must set forth what is false or misleading about a statement, and . . . an explanation as to why the statement or omission complained of was false or misleading." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 n.10 (9th Cir. 1999).

Plaintiffs' fraud claims are not sufficiently specific. Plaintiffs must allege each of the elements of fraud. In particular, they must allege what the misrepresentations were, who made them, when, where, and why plaintiffs' reliance on these statements was reasonable. Accordingly, plaintiffs' fraud claims are DISMISSED with leave to amend.

### E.     Rescission (claim 14)

Plaintiffs allege that they are entitled to rescission of their mortgage agreement because they were fraudulently induced to agree to the mortgage. Section 1689 of the California Civil Code provides that a party to a contract may rescind the contract if, *inter alia*, "the consent of the party rescinding . . . was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." Cal. Civ. Code § 1689(b)(1).

Plaintiffs may be entitled to rescission of their mortgage contract if they can establish that their consent to the agreement was obtained by fraud. For the reasons discussed in the foregoing section, plaintiffs have failed to state a claim for fraud. Accordingly, they have not properly alleged a basis for their rescission claim. This cause of action is DISMISSED with leave to amend.

### F.     Conversion (claim 4)

"Conversion is the wrongful exercise of dominion over the property of another." *Oakdale Village Group v. Fong*, 43 Cal. App.4th 539, 543 (1996). To establish conversion, a plaintiff must show: (1) the plaintiff's ownership or right to possession to the property at the time of conversion; (2) the defendant's conversion by a wrongful act; and (3) damages. *Id.* at 543-44.

Here, the alleged conversion is that defendants "established an unwarranted high monthly payment by artificially inflating the value of the property to fraudulently justify a larger mortgage."

9

FAC ¶ 58. This is not a conversion because it does not constitute an exercise of dominion by defendants over plaintiffs' property. Plaintiffs have not alleged any of the elements of a conversion. Accordingly, plaintiffs' claim is DISMISSED with leave to amend.

### G.     Quiet title (claim 5)

An action to quiet title may be brought to establish title against adverse claims to real property or any interest therein. Cal. Code Civ. Proc. § 760.020. A quiet title action must include: (1) a description of the property in question; (2) the basis for plaintiff's title; and (3) the adverse claims to plaintiff's title. Cal. Code Civ. Proc. § 761.020.

Plaintiffs have not alleged that they are the rightful owners of the property, i.e. that they have satisfied their obligations under the Deed of Trust. As such, they have not stated a claim to quiet title. Accordingly, plaintiffs' claim is DISMISSED with leave to amend.

### H.     Wrongful foreclosure (claim 9)

The only statutory authority plaintiffs cite for their "wrongful foreclosure" claim is California Civil Code § 2924. According to plaintiffs, the notice of default was defective. Section 2924 sets forth various requirements for notices of default, including that they contain:

> (A) A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property;
> (B) A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.
> (C) A statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.

Cal. Civ. Code § 2924(a)(1)(A)-(C). The Court has reviewed of the notice of default dated May 21, 2008, *see* MERS Request, ex. B, and finds that it appears to contain the required information. Plaintiffs must identify the specific subsection of § 2924 that defendants allegedly violated and must allege facts showing that the notice of default violated this provision. If plaintiffs' claim is based on any other statutory authority, they must identify the statute. Accordingly, plaintiffs' claim is DISMISSED with leave to amend.

### I.  Conspiracy (count 10), aiding and abetting (claim 11) and unlawful joint venture (claim 12)

Plaintiffs' eleventh and twelfth claims are for "aiding and abetting" and "unlawful joint venture," respectively. These are theories of liability, not distinct causes of action under California law. Accordingly, these claims are DISMISSED with prejudice.

Plaintiffs' tenth cause of action, for "conspiracy" is similarly deficient. "Under California law, there is no separate and distinct tort cause of action for civil conspiracy." *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997); *see also* 5 Witkin, *Summary of California Law* § 45 (10th ed. 2005). "The major significance of [a] conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 508 (1980).

Plaintiffs' claim for conspiracy survives only to the extent that plaintiffs successfully allege an underlying wrongful act. Plaintiffs must specify which alleged torts are the predicate offenses for their conspiracy claim. They must also allege specific facts about how each defendant conspired to commit the allegedly wrongful acts. Accordingly, plaintiffs' claim for conspiracy is DISMISSED with leave to amend.

### J.  Injunctive relief (claim 13)

Plaintiffs agree with defendants that their claim for injunctive relief should be construed as a request for a remedy, not as a separate cause of action. *See* Pl. Opp. to MERS Mot., at 12. Accordingly, plaintiffs' thirteenth cause of action is DISMISSED with prejudice. If plaintiffs choose to file an amended complaint, they may add injunctive relief to their other requests for relief.

## 5.  Federal Law Claims

### A.  RESPA (claim 15)

Plaintiffs claim that defendants did not comply with the "disclosure requirements" of the Real

11

Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* If plaintiffs choose to file an amended complaint, they must cite the specific provisions of RESPA that defendants are alleged to have violated.

Defendants contend plaintiffs' RESPA claim is barred by the statute of limitations. Section 2605 of RESPA governs disclosure requirements. Claims under § 2605 are governed by a three-year statute of limitations. 12 U.S.C. § 2614. The mortgage transaction at issue here was consummated on March 28, 2006. Plaintiffs filed their complaint in state court on March 24, 2009. Therefore, contrary to defendants' contention, a claim under § 2605 would not be time-barred.

RESPA claims brought under other provisions, including § 2607 and § 2608, must be brought within one year of the alleged violation. 12 U.S.C. § 2614. If plaintiffs seek to allege claims under these sections, they must explain why their claims are not barred by the one-year statute of limitations. For example, if they claim they are entitled to equitable tolling, they must allege facts that show the statute of limitations should be tolled.

If plaintiffs seek to bring claims under other RESPA provisions, they must establish that there is a private right of action for the alleged violations.

Accordingly, plaintiffs' RESPA claims are DISMISSED with leave to amend.

### B.     TILA (claim 15)

Plaintiffs allege that defendants violated sections "226.16, 226.18, 226.19, 226.34, 226.35, and 226.36 of the Truth in Lending Act." FAC ¶ 126. As an initial matter, plaintiffs appear to be citing to provisions of "Regulation Z," the regulatory scheme promulgated by Federal Reserve Board pursuant to TILA. 15 U.S.C. § 1604(a); 12 C.F.R. § 226. TILA is codified at 15 U.S.C. §§ 1601, *et seq*. The Court directs plaintiffs to cite to the provisions of the United States Code on which their claims are based, as well as the specific regulations that defendants are alleged to have violated. In addition, plaintiffs must allege facts establishing how defendants violated each provision. For example, 12 C.F.R. § 226.18 governs disclosures. If plaintiffs contend that the disclosures on their mortgage transaction failed to comply with TILA, they must explain exactly what information defendants failed to provide.

TILA imposes a one year statute of limitations on private actions for damages. *See* 15 U.S.C.

§ 1640(e) ("Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."). Plaintiffs agree that their claims for damages under TILA are time-barred. *See* Pl. Opp. to MERS Mot., at 12. Plaintiffs claim, however, that they are entitled to a three-year statute of limitations for rescission.

Generally, TILA provides that borrowers have until midnight of the third business day following the consummation of a loan transaction to rescind the transaction. 15 U.S.C. § 1635(a). A borrower's right of rescission is extended from three days to three years if the lender (1) fails to provide notice of the borrower's right of rescission or (2) fails to make a material disclosure. 12 C.F.R. § 226.23(a)(3). To take advantage of the extended statute of limitations for rescission, plaintiffs must allege that they were not provided notice of their right to rescind. Alternatively, they must allege that their lender failed to make a material disclosure. If plaintiffs pursue the latter theory, they must consult Regulation Z's definition of material disclosures. *See* 12 C.F.R. § 226.23(a)(3) n.48 ("The term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in § 226.32(c) and (d).").

Accordingly, plaintiffs' TILA claim is DISMISSED with leave to amend.

### 6. Plaintiffs' Motion for a Preliminary Injunction

On July 30, 2009, plaintiffs filed a motion for a temporary restraining order enjoining defendants from proceeding with a foreclosure sale of plaintiffs' residence, which was then scheduled to take place on August 4, 2009. By stipulation of the parties, the foreclosure sale is now scheduled to occur on August 20, 2009 and plaintiffs have converted their motion into a request for a preliminary injunction. *See* Docket No. 52.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, __U.S.__, 129 S.Ct. 365, 374 (2008). "Plaintiffs seeking preliminary relief [must] . . . demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 375 (emphasis in

original).

As the foregoing discussion has established, plaintiffs have not adequately alleged that they have any legal entitlement to relief. The Court therefore cannot say that plaintiffs are likely to succeed on the merits and cannot grant this request for a preliminary injunction. Plaintiffs' motion is DENIED.

### 7. Further Instructions to Plaintiffs' Counsel

The Court notes that plaintiffs' complaint bears a striking resemblance to complaints filed in the Superior Courts of Solano County, Santa Clara County, and Sacramento County. *See* MERS Request, exs. D, E, F. If plaintiffs choose to file an amended complaint, plaintiffs' counsel must tailor the claims to the facts of this case. For example, if inadequate disclosure under TILA is alleged, counsel must specifically allege what disclosures were made and what disclosures should have been made, and allege in some detail the structure of plaintiffs' loan.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiffs' motion for a preliminary injunction [Docket Nos. 43, 44] and GRANTS defendants' motions to dismiss with leave to amend. [Docket Nos. 21, 26] **Should plaintiffs choose to file an amended complaint, they must do so by September 4 , 2009.** Defendants Homecomings and GMAC Mortgage, Inc. have filed a motion to dismiss plaintiffs' First Amendment Complaint, set for oral argument on September 25, 2009. In light of the current order, the Court VACATES the September 25 hearing and DENIES the motion without prejudice to refiling after plaintiffs file an amended complaint. [Docket No. 31] No appearance has been made for defendant Sutter West Mortgage. **No later than September 4, 2009, plaintiffs are directed to inform the Court whether Sutter West Mortgage has in fact been served with process and, if not, why the Court should not dismiss Sutter West Mortgage for failure to prosecute**.

**IT IS SO ORDERED.**

Dated: August 12, 2009

SUSAN ILLSTON
United States District Judge